**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| **FORTEGRA SPECIALTY INSURANCE COMPANY,** | ) ) | **CASE NO.** _____ |
| **PLAINTIFF,** | ) ) ) | |
| **v.** | ) ) | **JUDGE** _____ |
| **NATURAL ENERGY FIELD SERVICES, LLC,** | ) ) ) ) | |
| **Serve: Registered Agent Solutions, Inc.** | ) | **COMPLAINT FOR DECLARATORY** |
| **828 Lane Allen Road, Suite 219** | ) | **JUDGMENT** |
| **Lexington, Kentucky 40504** | ) ) | |
| **DEFENDANT.** | ) | |

Plaintiff, Fortegra Specialty Insurance Company ("Fortegra"), for its Complaint for Declaratory Judgment against Defendant, Natural Energy Field Services, LLC, ( "NEFS"), avers as follows:

**NATURE OF THE ACTION**

1.     This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Fortegra seeks a legal determination that it has no duty to defend or indemnify NEFS under a Claims Made and Reported Contractors Professional Liability Insurance Policy issued to Natural Energy Field Services, LLC (the "Policy") with respect to a series of lawsuits (collectively the "Underlying Lawsuits") filed against NEFS by numerous Parties. Specifically, the following Lawsuits have been filed to date:

   a. *LaHart v. Sunoco Pipeline L.P., Natural Energy Field Services, LLC, et al.*, United States District Court for the Eastern District of Pennsylvania, Civil Action No. 5:26-

1

cv-01133 (removed from Court of Common Pleas, Philadelphia County, Pennsylvania); [1]

b.  *Wojnovich v. Sunoco Pipeline L.P., Natural Energy Field Services, LLC, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, Civil Trial Division, Case No. 250402048;

c.  *Geltch v. Sunoco Pipeline L.P., Natural Energy Field Services, LLC, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, Civil Trial Division, Case No. 250402049;

d.  *Miller v. Sunoco Pipeline L.P., Natural Energy Field Services, LLC, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, Civil Trial Division, Case No. 250502415;

e.  *Mela v. Sunoco Pipeline L.P., Natural Energy Field Services, LLC, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, Civil Trial Division, Case No. 250502461;

f.  *Tsolakis v. Sunoco Pipeline L.P., Natural Energy Field Services, LLC, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, Civil Trial Division, Case No. 250700919;

g.  *Vanni v. Sunoco Pipeline L.P., Natural Energy Field Services, LLC, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, Civil Trial Division, Case No. 250400887; and

h.  *Meng v. Sunoco Pipeline L.P., Natural Energy Field Services, LLC, et al.*, Court of Common Pleas, Philadelphia County, Pennsylvania, Civil Trial Division, Case No. 260203551.

2.   The Underlying Lawsuits assert claims that NEFS failed to properly perform duties related to the maintenance and/or control of a petroleum pipeline that resulted in damage and injuries to residents of Bucks County, Pennsylvania.

3.   A copy of the Policy under which NEFS seeks coverage for the claims asserted against it in the Underlying Lawsuits is attached as **Exhibit 2**.

---

[1] A copy of the Second Amended Class Action Complaint associated with this matter (attached as **Exhibit 1**) contains factual assertions and claims that are repeated in each of the Underlying Lawsuits and is provided as an example of said claims in lieu of providing copies of each Lawsuit.

2

## THE PARTIES

4.      Plaintiff, Fortegra Specialty Insurance Company, is and at all times material to this action has been an insurance company organized pursuant to the laws of the State of Arizona, having its principal place of business in the State of Florida, and at all times relevant was authorized to engage in the business of insurance in the Commonwealth of Kentucky. It is a citizen of a state other than the Commonwealth of Kentucky.

5.      Defendant, NEFS, is and at all times material to this action has been a limited liability company organized under the laws of the Commonwealth of Kentucky and has its primary place of business in the Commonwealth of Kentucky. It is a citizen of the Commonwealth of Kentucky.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

7.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy is between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

8.      An actual justiciable controversy between Fortegra and NEFS exists within the meaning of 28 U.S.C. § 2201 regarding whether Fortegra has a duty to defend and/or indemnify NEFS under the Fortegra Policy with respect to the claims asserted against NEFS in the Underlying Lawsuits, as more particularly described below.

9.      The matter in controversy involves a declaration of rights, duties, and obligations under an insurance policy pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.

10.     Venue is proper in the Eastern District of Kentucky pursuant to 28 U.S.C. § 1391(b) because the contract that is the subject of this litigation was entered into in this District and the Defendant resides in this District.

**FACTUAL BACKGROUND**

11.     Natural Energy Field Services provides inspection services and consults with energy companies to ensure projects are constructed in accordance with pertinent federal and state regulations, permits, and client specifications.

12.     Beginning in approximately 2014, Energy Transfer LLC ("ET") retained NEFS to monitor various construction projects and ensure that specific regulations were followed in ET's projects.

13.     Some of the projects that NEFS was retained to assist with were part of the Sunoco Twin Oaks Pipeline (the "Pipeline"), which is used to transport jet fuel from Delaware County, Pennsylvania to Newark, New Jersey.

14.     NEFS has no ownership interest in the Pipeline or any related structures, nor does it have any control or decision-making authority over the operation of the Pipeline or any related structures.

15.     In January 2025, ET retained NEFS to assist with ET's investigation into various complaints ET received about a potential leak at the Sunoco Twin Oaks Pipeline.

16.     NEFS assisted ET with identifying a leaking pipe sleeve located in Bucks County, Pennsylvania, which was confirmed on or about January 31, 2025.

17.     The repair of the Pipeline was completed on or about February 5, 2025, and the Pipeline has continued in use since that date.

18.     ET contracted with NEFS and other contractors to monitor repairs on the Pipeline, and NEFS remained on the work site to monitor the repair at the identified leak location and to monitor work at other Pipeline work sites.

19.     NEFS monitored repair work during 2025, but did not perform any monitoring or engage in any Pipeline work whatsoever at any site associated with the Sunoco Twin Oaks Pipeline after October 3, 2025.

## UNDERLYING LAWSUITS

20.     Beginning on or about January 23, 2026, NEFS was named as one of numerous defendants in several complaints filed in the Court of Common Pleas of Philadelphia, First Judicial District of Pennsylvania, Civil Trial Division, as outlined above in Paragraph 1.

21.     On or about February 3, 2026, NEFS, through its broker, provided Fortegra with notice of the litigation and requested a defense under NEFS's Contractors Professional Liability Insurance Policy with Fortegra.

22.     The ACORD Liability Notice of Occurrence / Claim providing notice of the litigation indicates that NEFS was served notice of a "pollution type claim" and that its "arrival and participation on the project was after the initial concern was claimed per the lawsuit." Further, the Notice stated that NEFS's "work was to provide visual observation and inspection on the area of concern, after their Master Client, Energy Transfer may have already been aware of circumstances that have led to the claim being made."

23.     The Claimants in the Underlying Lawsuits ("Claimants"), who are residents of Bucks County, Pennsylvania, allege, among other things, that the Pipeline leak that occurred on or before January 31, 2025, caused a catastrophic environmental disaster that has resulted in polluted soil, water, and air and has caused injury to their homes and health.

24. The Claimants allege that NEFS and other "Contractor Defendants" failed to properly perform their monitoring and maintenance duties related to the Pipeline.

25. The Claimants allege that they first complained of fuel odor in September 2023 and several times thereafter before the leak was discovered and/or confirmed in January 2025.

26. The Claimants allege that significant quantities of fuel have been found on and recovered from their wells and properties, and that their properties have not been fully restored from the chemicals that leaked from the Pipeline prior to it being repaired in early 2025.

27. The Claimants assert the following causes of action against NEFS:

   a. **Negligence** – Claimants allege that NEFS failed to use reasonable care in the maintenance, monitoring and repair of the Pipeline, failed to properly identify the scope of the leak or of the resulting pollution plume once the leak had been identified in January 2025, failed to employ a safe and reliable monitoring and leak detection system, failed to properly maintain and repair the Pipeline thereby allowing dangerous and toxic substances to be released into the environment, failed to effectively mitigate the effects of the Pipeline leak, and that its negligence was a substantial factor in bringing about real and personal property damage, environmental contamination, economic losses, and diminution of property values to the Claimants.

   b. **Public Nuisance** – Claimants allege that the discharge of toxic substances, odors and gasses from the Pipeline have caused an unreasonable interference with public rights to clean water and air and have interfered with the public peace.

   c. **Private Nuisance** – Claimants alleged that NEFS's negligent and reckless conduct allowed Claimants' land to be invaded by toxic substances, and that the lights,

6

sounds, sediments and odors related to remediation activities have caused injury to Claimants in that they have lost the use and enjoyment of their homes and property.

d. **Negligent Infliction of Emotional Distress** – Claimants allege that NEFS's negligence in failing to comply with duties to monitor and maintain the Pipeline has caused severe emotional distress to Claimants.

e. **Medical Monitoring** – Claimants allege that NEFS's failure to prevent the discharge of toxic substances into Claimants' soil, water and property resulting in Claimants being exposed to those substances has placed Claimants at an increased risk of contracting certain diseases and illnesses in the future, which requires that they receive medical monitoring to allow for early detection and treatment of any such illness or disease related to the toxic substances.

28. The Claimants seek unspecified compensatory damages, medical monitoring, punitive damages, as well as pre and post judgment interest.

29. Claimants also seek a declaratory judgment that Defendants, including NEFS, "are responsible for the Pipeline Leak, and responsible for all past and future costs to fully restore and remediate all environmental and other harms caused by Defendants to Plaintiff."

30. Further, Claimants seek "equitable and injunctive relief" to include: (i) The enjoinment of further operations of the Twin Oaks Pipeline until Defendants are able to fully guarantee its safe operation; (ii) Provision of full water supply for Plaintiffs; (iii) Provision of temporary housing and all associated costs; (iv) Installation of a best-in-class leak detection system for the Twin Oaks Pipeline that can actually detect – and guarantee that it will detect – problems in real time; and (v) Full restoration and remediation of all environmental contamination including

but not limited to groundwater, soil, and air to background concentrations, as well as restoration and replacement of pipes, fixtures, and equipment that have been affected by the Leak.

31. NEFS provided Notice to Fortegra of the litigation on or about February 3, 2026.

32. On or about March 20, 2026, Fortegra, through counsel, advised NEFS that "[a]s the Pollution Incident and the alleged Wrongful Acts [that form the basis for the Underlying Lawsuits] predate the December 15, 2025 Retroactive Date, the Company reserves its right to limit or deny coverage for both Loss and Defense Costs pursuant to the Professional Liability, Contractors Pollution Liability, or Bodily Injury / Property Damage Insuring Agreements."

33. Further, Fortegra advised NEFS that it "reserves its rights to file a declaratory judgment action … to have Fortegra's rights and duties under the Policy determined."

34. Meanwhile, Fortegra has agreed to provide NEFS with a defense in the Underlying Lawsuits under a Reservation of Rights, with leave to seek an adjudication of the Parties' relative rights, duties, and obligations under the subject Policy.

## **THE POLICY**

35. Fortegra issued Contractors Professional Liability Insurance Policy No. AXC1000926-00 (the "Policy") to Natural Energy Field Services, LLC ("NEFS") with a policy period of December 19, 2025 to December 19, 2026. (*See* certified Policy, attached as **Exhibit 2**.)

36. The Policy has Limits of Liability (inclusive of claim expenses) of $2,000,000 each claim, $2,000,000 Policy Aggregate, with a deductible of $15,000.

37. The Policy has a retroactive date of December 19, 2025.

38. The Policy is a **CLAIMS-MADE AND REPORTED POLICY**, and contains the following language:

> This is a Claims-Made and Reported Policy. Except as otherwise provided in this Policy, the coverage afforded is limited to those Claims which are first made against

8

the Insured and reported to the Insurer during the Policy Period or Extended Reporting Period, if applicable.

39. Under **SECTION I – COVERAGES**, the Policy's **A. Insuring Agreements** State:

**1. Professional Liability**

The **Insurer** agrees to pay on behalf of the **Insured, Loss** in excess of the Deductible amount and up to the Limits of Liability shown in Item **4.** of the Declarations; provided that such **Loss** results from a **Claim** first made and reported in writing during the **Policy Period** or Extended Reporting Period, if applicable, arising out of a **Wrongful Act** committed before the end of the **Policy Period** and on or after the Retroactive Date, if any, shown in Item **8.** of the Declarations.

**2. Contractors Pollution Liability**

The **Insurer** agrees to pay on behalf of the **Insured, Loss** in excess of the Deductible amount shown in Item **5.** of the Declarations and up to the Limits of Liability shown in Item **4.** of the Declarations; provided that such **Loss** results from a **Claim** first made and reported in writing during the **Policy Period** or Extended Reporting Period, if applicable, arising out of a **Pollution Incident** occurring before the end of the **Policy Period** and on or after the Retroactive Date, if any, shown in Item **8.** of the Declarations.

40. The Policy also contains the following coverage provisions:

**B. Supplemental Payments**

These supplemental payments will be paid up to the amount shown in Item **4.** of the Declarations and in addition to the applicable Limit of Liability shown in Item **4.** of the Declarations.

\*\*\*

**D. Bodily Injury/Property Damage Coverage**

The **Insurer,** notwithstanding Exclusion **III.E.,** will pay on behalf of the **Insured** all sums, subject to the deductible set forth in Item **5.** of the Declarations up to the amount shown in Item **4.** of the Declarations, which the **Insured** shall become legally obligated to pay as **Loss** resulting from **Claims** first made against the **Insured** and reported to the **Insurer** during the **Policy Period** or Extended Reporting Period, if applicable, for, based on, or arising out of, either directly or indirectly, **Bodily Injury** or **Property Damage** resulting from **Wrongful Acts** in the performance by the **Insured** of **Contracting Services,** provided, however, that such coverage shall be a

part of and not in addition to the aggregate limit of liability set forth in the Declarations.

41. The Contractors Professional Liability Insurance Policy Declarations provides, in relevant part:

**1.  NAMED INSURED: Natural Energy Field Services, Inc.**

\*\*\*

**3. POLICY PERIOD: FROM: 12/19/2025 TO: 12/19/2026**

\*\*\*

**5. DEDUCTIBLE (Inclusive of Claim Expenses): $15,000 Each Claim**

\*\*\*

**7. CONTRACTING SERVICES: Energy / Pipeline Contractor**

**\*\*\***

**8. RETROACTIVE DATE (if applicable): 12/19/2025**

42. The Policy's **SECTION VI – GENERAL CONDITIONS** provides, in relevant part:

**C. Multiple Wrongful Acts, Claims or Claimants**

Two or more **Claims** arising out of a single **Wrongful Act,** or any series of related **Wrongful Acts,** will be considered a single **Claim**. Each **Wrongful Act**, in a series of related **Wrongful Acts**, will be deemed to have occurred on the date of the first such **Wrongful Act.**

43. The Policy's **SECTION V - DEFINITIONS** contains the following definitions:

**B. Claim** means any of the following arising from a **Wrongful Act:**

**1.** a written demand received by any **Insured** for monetary, non-monetary or injunctive relief, including a written demand that the **Insured** toll or waive a statute of limitations; or

**2.** a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading; or

10

**3.** the institution of an arbitration, mediation, or other alternate dispute resolution proceeding against any **Insured.**

\*\*\*

**D. Contracting Services** means any construction services performed by the **Insured,** or by any person or entity for whom the **Named Insured** is legally liable, including, but not limited to, construction, erection, fabrication, installation, assembly, manufacture, demolition, dismantling, excavation, remediation or supplying any materials, parts or equipment, and any services listed in **Item 7.** Of the Declaration Page.

It is further understood that, regarding the coverage provided in this Policy under Insuring Agreement **A.1. Contracting Services** includes **Technology Services.**

\*\*\*

**M. Loss** means a monetary judgment or settlement that an **Insured** becomes legally obligated to pay as a result of a **Claim,** including punitive or exemplary damages where insurable under applicable law.

**1. Loss** includes:

    **a. Defense Costs;** and
    **b. Rectification Costs;** and
    **c.** pre and post judgement interest on the entire amount of any judgment which accrues after the entry of the judgment and before the **Insurer** has paid or tendered or deposited in the Court that part of the judgment that does not exceed the Policy limit.
    **d.** As regards coverage provided under SECTION **I** – COVERAGES, Insuring Agreement **A.2.,** Contractors Pollution Liability, **Loss** includes **Cleanup Costs** for which the **Insured** becomes legally obligated to pay as the result of a **Claim** for which this insurance applies.
    **e. Faulty workmanship;**

**2. Loss** does not include:

    **a.** any fines, penalties, taxes or sanctions, whether imposed by law or otherwise;
    **b.** the return, reduction or restitution of fees or expenses
    **c.** amounts which are uninsurable under applicable law; or
    **d.** the cost of complying with any injunctive, declaratory or administrative relief.

\*\*\*

**P. Personal Injury Offense** means:

1. False arrest, humiliation, mental anguish, emotional distress, unlawful detention, false imprisonment, wrongful entry, eviction or other invasion of private occupancy, abusive litigation, abuse of process or malicious prosecution;
2. the publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of any individual's right to privacy; or
3. misrepresentation in advertising, infringement of copyright, trademark, service mark, trade dress or trade name.

**R. Pollution Incident** means an alleged or actual discharge, dispersal, release, seepage, migration or escape of smoke, soot, fumes, acids, alkalis, toxic chemicals, asbestos, **Mold,** liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water taking place on or after the Retroactive Date, if any, shown in the Declarations:
**1.** arising from a **Wrongful Act,** or
**2.** occurring at any location at which the **Insured** is performing **Contracting Services** that causes **Bodily Injury** or **Property Damage** or financial loss.

\*\*\*

**AA. Wrongful Act** means any actual or alleged act, error, omission or breach of duty by any **Insured** in the rendering of or failure to render **Contracting Services. Wrongful Act** also means an actual or alleged **Personal Injury Offense** by any **Insured** in the rendering of or failure to render **Contracting Services.**

## FACTUAL ISSUES RELATED TO COVERAGE

44.     In the Underlying Lawsuits outlined in Paragraph 1, Claimants allege that a Pipeline leak was first confirmed on or about January 31, 2025, although it is alleged that the leak quite likely existed as early as September 2023.

45.      The leak that was discovered on or about January 31, 2025, was repaired on or about February 2, 2025, and the Pipeline was thereafter re-opened.

12

46. NEFS last performed work on the Pipeline on or about October 3, 2025, and has not conducted any additional work or contract services related to the Pipeline after October 3, 2025.

47. Pursuant to Policy Condition VI.C (Multiple Wrongful Acts), two or more Claims arising out of a single Wrongful Act, or a series of related Wrongful Acts, are considered a single Claim, and each Wrongful Act in such a series is deemed to have occurred on the date of the first such Wrongful Act.

48. Because all allegations in the Underlying Complaints arise from the same Pipeline leak, they constitute a single Claim under the Policy.

49. As the alleged Wrongful Acts arise from the Pipeline leak, they are deemed to have occurred at the time the leak first occurred, which was prior to its discovery on or about January 31, 2025.

50. NEFS performed no services whatsoever for any entity related to the Pipeline after October 3, 2025; therefore, any claimed negligence, wrongful act, or breach of any duty by NEFS occurred on or prior to that date.

51. The Policy contains a Retroactive Date of December 19, 2025.

52. The Policy's Insuring Agreements require that any covered Loss must occur on or after the Policy's Retroactive Date.

53. The alleged Pollution Incident and the alleged Wrongful Acts all occurred prior to the December 19, 2025 Retroactive Date; therefore, there is no event or occurrence that triggers coverage under the subject Policy.

54.     As coverage is not triggered, Fortegra has no duty to provide coverage for Loss or Defense Costs under the Professional Liability, Contractors Pollution Liability, or Bodily Injury/Property Damage Insuring Agreements.

55.     As coverage under the Policy is not triggered, Fortegra has no duty to provide a defense to NEFS in any of the Underlying Lawsuits.

56.     As coverage under the Policy is not triggered, Fortegra has no duty to indemnify NEFS for any settlement or judgment resulting from claims asserted against it in the Underlying Lawsuits.

57.     Nonetheless, NEFS has made a demand that Fortegra provide a defense against the Underlying Lawsuits and that Fortegra indemnify NEFS for any resulting settlement or judgment.

58.     As such, there is a genuine and *bona fide* dispute between the Parties regarding Fortegra's obligations under the Policy, and an actual and justiciable controversy exists between Fortegra and NEFS as to the availability of insurance coverage for the claims asserted against NEFS in the Underlying Lawsuits.

59.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with the power to declare the rights and liabilities of the parties herein and to give such other and further relief as may be necessary.

## CLAIM FOR RELIEF

### DECLARATION OF RIGHTS THAT FORTEGRA HAS NO DUTY TO DEFEND OR INDEMNIFY NEFS

60.     Fortegra incorporates by reference as though fully set forth herein the averments contained in Paragraphs 1 through 59, inclusive.

61.    Fortegra issued Contractors Professional Liability Insurance Policy No. AXC1000926-00 to Natural Energy Field Services, LLC with a Policy Period of December 19, 2025 to December 19, 2026, with a Retroactive Date of December 19, 2025.

62.    The Policy's coverage provisions are triggered only by events that occurred after the Retroactive Date.

63.    The Pipeline leak that is the subject of the Underlying Lawsuits is alleged to have resulted in the dispersion of multiple toxic chemicals into the surrounding environment and to have infiltrated the aquifer and bedrock in sufficient quantities to have contaminated the groundwater supply of neighborhood residences.

64.    All claims asserted in the Underlying Lawsuits arise from a Pipeline leak that occurred on or before January 31, 2025.

65.    All claims asserted against NEFS in the Underlying Lawsuits arise from alleged negligence in NEFS's performance of contracting services under a contract with Energy Transfer.

66.    The last date NEFS performed any contracting services, or any service at all, for Energy Transfer or any entity related to the Pipeline was on or about October 3, 2025.

67.    The environmental contamination that is the subject of the Underlying Lawsuits is a "Pollution Incident" within the meaning of Fortegra's Policy.

68.    The "Pollution Incident" that is the subject of the Underlying Lawsuits is alleged to have been caused by the wrongful acts of NEFS and others and/or alternatively by NEFS's negligence in the performance of its contracting services related to the Pipeline.

69.    The "Pollution Incident" that is the subject of the Underlying Lawsuits occurred on or before January 31, 2025, the date the Pipeline leak was discovered.

70.    The "Pollution Incident" that is the subject of the Underlying Lawsuits occurred prior to December 19, 2025, the Retroactive Date of the Policy.

71.    The last day NEFS performed any contracting services on the Pipeline Leak, other areas of the Pipeline, or any related site was October 3, 2025.

72.    Any negligence on the part of NEFS in the performance of its contracting services as it relates to the Pipeline leak occurred on or before October 3, 2025.

73.    Any negligence on the part of NEFS in the performance of its contracting services occurred prior to December 19, 2025, the Retroactive Date of the Policy.

74.    In a Claims-Made Policy, the Retroactive Date is the earliest date a wrongful act can occur and still be covered by the Policy.

75.    The "Pollution Incident" and any wrongful act committed by NEFS in the performance of contracting services occurred prior to the Retroactive Date of the Policy's coverage provisions.

76.    In outlining the scope of a covered Loss, the Policy's Insuring Agreements do not provide coverage for the cost of complying with any injunctive, declaratory or administrative relief.

77.    To the extent the Underlying Lawsuits seek injunctive, declaratory or administrative relief, the Policy does not provide coverage for those claims within the meaning of a covered Loss.

78.    Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Fortegra requests that the Court determine as a matter of law the Parties' relative rights and obligations under the subject insurance policy.

79.    Fortegra respectfully requests that the Court declare that the claims asserted against NEFS in the Underlying Lawsuits do not trigger the Coverage Provisions of the Policy because the claims are based on events that occurred prior to the Policy's Retroactive Date, and that Fortegra therefore has no duty to provide a defense or to indemnify NEFS against any of the claims asserted against NEFS in the Underlying Lawsuits.

## PRAYER FOR RELIEF

**WHEREFORE**, Fortegra prays for the following relief:

1. For a declaration that Fortegra has no duty to defend NEFS in the Underlying Lawsuits;

2. For a declaration that Fortegra has no duty to indemnify NEFS in connection with any claims asserted against NEFS in the Underlying Lawsuits;

3. For a declaration that Fortegra is entitled to withdraw the defense it has heretofore provided under a reservation of rights to NEFS in the Underlying Lawsuits;

4. For reasonable attorneys' fees and costs associated with this action; and

5. For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER, LLP**

*/s/ W. Douglas Kemper*
James M. Burd
W. Douglas Kemper
100 Mallard Creek Road, Suite 250
Louisville, KY 40207
(502) 238-7860 (Direct)
(502) 238-7844 (Fax)
James.burd@wilsonelser.com
Doug.kemper@wilsonelser.com
*Counsel for Plaintiff,*
*Fortegra Specialty Insurance Company*

17